## A. L. FAUBLE v. STATE.

No. A-8161.   Feb. 26, 1932.
(11 Pac. [2d] 202.)

154

John T. Levergood and G. C. Abernathy, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (George H. Copeland, of counsel), for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Pottawatomie county of extortion, and was sentenced to serve a term of 5 years in the state penitentiary.

The case was closely tried by both counsel for the state and for the defendant. The charge was predicated upon section 2138, Comp. St. 1921. It charges in substance that defendant on October 6, 1929, with a felonious intent to extort money from one J. F. Buck, did send said Buck a certain letter quoted in full in the information, demanding said Buck pay $17,000 in currency, in a bundle to be put at a certain designated post near the end of the Canadian River bridge southwest of Shawnee. This letter purports to have been written by, and is signed, "Chicago Gangsters & Gunmen." It is lurid and dramatic in tone, and reads more like a burlesque than the emanations

of a sane mind. The testimony in support of the charge is equally bizarre. The plot suggests the most extreme of the tabloids or some sensational moving picture of gang activities. Very briefly stated, it is, in effect, that at the time charged defendant was operating a store in Shawnee. On October 6 six letters were written and sent to various persons. About the same date three other letters were written and likewise sent to persons all in or near Shawnee. All letters were of the same general tenor, and couched in much the same language, purporting to be from "Chicago Gangsters & Gunmen," demanding the persons addressed put sums of money ranging from $3,500 to $30,000 at the designated places mentioned in the various letters. The witness Buck received the letter charged in the information through the mail, and at once sought the assistance of qualified experts and others, so that it was conclusively proven by circumstantial evidence that these letters were all written on the same typewriter, except one, and sent by defendant. On the night of October 12, defendant disappeared from his home, and the next day appeared at Wichita, Kan., reporting that he had been kidnapped by "Chicago gangsters and gunmen" from his store at Shawnee, conveyed to the vicinity of Wichita, and made to jump off a bridge into the river. He was returned to Shawnee, and October 15th made a lengthy statement detailing how certain gangsters and gunmen had attempted to extort $5,000 from him, and had in fact paid them this sum in six different payments, and required him to assist them in their attempts to extort money from various other persons. Also he kept a diary in which he made a record of much the same matter related by him. In this statement he denied having seen the letters. He testified in the trial of this case, and explained his fingerprint on the "Buck" letter by stating

that the "gangsters and gunmen" wrote the letters in his store, dropped them on the floor, and required him to pick them up. He explained his failure to call for assistance at the various times these gangsters and gunmen were at his place and at other places by stating he was in fear of bodily injury, that he was kidnapped by these gangsters because he would not shoot one of the persons to whom a letter was addressed or shoot into the house of another. There is much more of this weird story not necessary to set out. Defendant's story is so improbable that it taxes the credulity, and we are not suprised that the jury did not believe it.

The first contention is that the court erred in instructing the jury that the offense charged is extortion under the provisions of section 2138, Comp. St. 1921. Counsel insist the offense falls within the provisions of section 4, c. 2, Session Laws 1923-24; that the latter provision is a special provision within the meaning of section 1509, Comp. St. 1921, and the offense and punishment must be governed thereby, citing U. S. v. Tynen, 11 Wall. (78 U. S.) 88, 20 L Ed. 153; U. S. v. One Chevrolet Coupe (D. C.) 9 F. (2d) 85; Taylor v. State, 38 Okla. Cr. 350, 261 Pac. 978. An examination and comparison of section 2138, supra, and section 4, c. 2, Session Laws 1923-24, convinces us the latter enactment does not repeal or supersede the former; that it does not define the same offense. The former section defines a crime in the sending of a writing containing threats with the intent to extort money by mail or otherwise, to any person. The latter defines a crime in the sending to any person of any written or printed matter designed to threaten another with fear of life, bodily harm, or destruction of property. No reference is made in the latter enactment to the extortion of money. As a matter of history, we may take

judicial knowledge that chapter 2, Session Laws 1923-24, became law at about the height of the Ku Klux agitation, and was evidently directed to threatening matter purporting to be sent by or in the name of that organization. The title of the act and the first, second, and third sections clearly indicate this general purpose. It follows the court did not err in instructing the jury the crime charged is under the provision of section 2138, supra.

It is next contended the evidence is insufficient to sustain the judgment, for the reason there is no sufficient proof that defendant mailed the letter as alleged in the first part of the allegations of the information. It is alleged in the latter part of the information that defendant sent the letter through the United States mails. The statute does not require the sending be by mail; a sending in any other manner would constitute a crime, but Buck testified he received it by mail. The letter and the envelope in which it was inclosed were identified and admitted in evidence. The envelope was stamped and bore the postmark "October 6." The letter as heretofore stated had upon it the fingerprints of defendant. Certainly this proof is sufficient. Defendant argues at some length that the proof of letters of like tenor sent at about the same time to other persons in and about Shawnee were disconnected offenses and inadmissible in the trial of the offense charged. If the sending of these other letters is disconnected and without relation to the offense charged, they are inadmissible. Miller v. State, 13 Okla. Cr. 176, 163 Pac. 131, L. R. A. 1917D, 383; Frazier v. State, 31 Okla. Cr. 322, 239 Pac. 186. In the instant case, however, it is proven the various letters were written at about the same time by the same person, as a general scheme to extort money from different individuals. Defendant's diary, in part introduced in evidence, records that all were writ-

ten as a part of a general plan. Defendant in his testimony stated all these letters were written at his store at the same time, as follows:

"* * * Q. What were they doing at your store at that time? A. They came in there and demanded that I let them have a typewriter, and took me in the back part of the store and I sit on the east side of the store, and Blackie and Blondie were the ones that came in there—they took the typewriter and worked on the west side of the store. There was some Three Minute oats cases there, and they took the typewriter and worked there on those cases, and they did some writing on the typewriter. They wrote a bunch of letters that night— I don't know how many. Q. What then happened, after the letters were written, or while they were writing them? A. While they were writing letters there that night they had a case they carried with them, and they came in and they were laying letters and had some papers on this case, and laying some letters on this case, and they went to kind of lift the case up, and I noticed those papers and letters slipped off on the floor. Q. What happened then? A. They made me go and pick them up and hand them to them. Q. Did you pick them up and hand them to them? A. I did. * * * Q. Did all the letters fall together, or fall around over the floor?. A. I was sitting over where the flour pile was and they were catecornered over there where those oats boxes were, and Blondie was doing the writing. When they fell off and went on the floor they scattered out, and they told me to pick up those papers and letters and give to them. I picked them up and handed them over to them like that. (Indicating.) I didn't pick them all up at once. I handed them to them at different times, like that. (Indicating.) * * *"

A comparison of the contents of the different letters clearly discloses all were linked together as a part of one scheme or plan to extort money. All were admissible as tending to throw light on the offense charged, under the rule many times announced by this court. Mont-

gomery v. State, 13 Okla. Cr. 652, 166 Pac. 446; Hollings-head v. State, 21 Okla. Cr. 315, 207 Pac. 108; Wise v. State, 34 Okla. Cr. 284, 246 Pac. 656.

Lastly, it is argued that the court erred in refusing defendant permission to make a record. Sheriff Bert Lowery had testified that at a filling station defendant attempted to borrow a gun from him. He testified this was between 8 and 8:30 o'clock p. m. Defendant in his testimony denied any such conversation. He called Joe Gilles who worked at the filling station to prove that it was much earlier in the afternoon that Lowery was there. He was asked what conversation he had with Lowery and objection was sustained. Counsel then stated he wished to make an offer of testimony which the court refused. This refusal defendant contends is a violation of section 3065, Comp. St. 1921, and constitutes reversible error. The court at the time of excluding the offer stated he would permit proof that the witness was not at the filling station between 8 and 8:30, at the time he had testified. We fail to see how the conversation between the witness and Lowery was of any importance, but, being admitted, defendant had a right to refute it by any competent testimony, but the conversation between the witness and Lowery was not competent. Section 3065, supra, does not require a reversal for the failure to make a record of an offer of proof of immaterial and incompetent matter. Tudor v. State, 14 Okla. Cr. 67, 167 Pac. 341.

Upon a consideration of the whole record, we find no substantial error.

The case is affirmed.

DAVENPORT, P. J., and CHAPPELL, J., concur.